Micah MARTIN and Rachelle Martin,
Plaintiffs and Appellees,

v.

Clayton F. KEARL, Nita R. Kearl, and
John Does 1-5, Defendants and
Appellants.

No. 950743-CA.

Court of Appeals of Utah.

May 9, 1996.

Charles A. Schultz, Salt Lake City, for
Appellants.

Daniel W. Anderson and Craig T. Jacobsen, Salt Lake City, for Appellees.

Before ORME, DAVIS and JACKSON,
JJ.

## OPINION

JACKSON, Judge:

Clayton and Nita Kearl challenge the trial court's ruling for Western Mortgage and Realty Company (Western)[1] on Western's motion for summary judgment. We reverse.

## FACTS

The Kearls owned a parcel of land at 965 East New Hope Drive in Draper. In 1980, to secure a loan by Utah Firstbank (bank), they gave the bank a deed of trust encumbering the parcel. However, the property description on the deed of trust excluded a strip of land about twenty-five feet wide along the western side of the parcel (twenty-

---

1. During the course of this appeal, Micah and Rachelle Martin were substituted for Western.

five-foot strip). The bank later foreclosed and bought the property as described on the deed of trust (New Hope Property) at the foreclosure sale.

In August 1984, the bank sold the New Hope Property to Peter E. Johnson, financing his purchase with that property as security. When Johnson bought and took possession of the New Hope Property, he also took physical possession of the twenty-five-foot strip, which was integrated into the landscaping of the entire original parcel. Johnson eventually defaulted on his loan, and the bank's successor in interest, Western Mortgage, foreclosed and bought the New Hope Property at the foreclosure sale.

After taking possession of the New Hope Property in April 1994, Western also took physical possession of the twenty-five-foot strip, which remained integrated into the landscaping of the entire original parcel. Western discovered Johnson had never paid property taxes on the property. Over the years, the county had continued to assess property taxes on the entire original parcel, so, on May 27, 1993, when Western had paid all delinquent past property taxes on the New Hope Property, it also paid all delinquent past property taxes on the twenty-five-foot strip. In return, Western received a redemption certificate from Salt Lake County, stating the property was redeemed "from a certain sale thereof for delinquent taxes made by the county treasurer of Salt Lake County on January 15, 1987 to Salt Lake County, for general taxes delinquent November 30, 1986."

■ In September 1994, Western brought an action against the Kearls seeking to quiet title to the twenty-five-foot strip in Western. Western moved for summary judgment on the theory that, by "tacking" onto Johnson's period of possession, it had met the requirements to acquire the twenty-five-foot strip by

adverse possession.[2] The only issue both below and on appeal is whether the way in which Western paid the property taxes satisfies the additional statutory requirement found in section 78–12–12 of the Utah Code: "In no case shall adverse possession be considered established ... unless it shall be shown ... that the party, his predecessors and grantors have paid all taxes which have been levied and assessed upon such land according to law," Utah Code Ann. § 78–12–12 (1992). The trial court ruled Western had satisfied the tax requirement and, thus, had acquired the twenty-five-foot strip by adverse possession. The Kearls appeal from that ruling, arguing the trial court incorrectly determined the law applicable to the undisputed facts.[3] We agree.

## ANALYSIS

■ Summary judgment is only appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c). Thus, summary judgment involves only legal conclusions, which we review for correctness, according no deference to the trial court. *See Mountain States Tel. & Tel. Co. v. Garfield County*, 811 P.2d 184, 192 (Utah 1991).

■ Our analysis hinges on the fact that Western's payment of delinquent taxes on the twenty-five-foot strip effected a redemption of that property from the January 15, 1987 preliminary sale to Salt Lake County. *See* Utah Code Ann. § 59–10–33 (1974), *amended by* Utah Code Ann. § 59–2–1332 (1987), *amended by* Utah Code Ann. § 59–2–1336 (1992) (repealed 1995). The certificate of redemption found in the record is "prima-facie evidence of the redemption," *id.* § 59–2–1348 (1992). The Martins have not rebutted that statutory presumption. Therefore,

2. Under the doctrine of tacking, the seven-year period of possession may be completed by one possessor or by a series of possessors in privity with each other. *See Royal Street Land Co. v. Reed*, 739 P.2d 1104, 1106 (Utah 1987); *Home Owners' Loan Corp. v. Dudley*, 105 Utah 208, 225, 141 P.2d 160, 168 (1943). It is undisputed that, together, Johnson and Western met the other requirements of adverse possession—i.e., "actual, open, notorious, and exclusive possession of

the property for seven years continuously," *Royal Street*, 739 P.2d at 1106.

3. The Kearls had also argued to the trial court and on appeal that an issue of material fact existed regarding the location of the twenty-five-foot strip, but conceded in oral argument that its location is undisputed.

we presume Western's payment of back taxes to be a redemption, and the rule announced by the Utah Supreme Court in *Bowen v. Olson*, 2 Utah 2d 12, 15–16, 268 P.2d 983, 985 (1954), is directly applicable here.

Like the case at issue, *Bowen* involved plaintiffs seeking to quiet title by establishing their adverse possession of a piece of property.[4] *Id.* at 983. The taxes on that property had fallen delinquent during two years out of the seven-year adverse possession period. *Id.* at 984. Consequently, the property had been sold· to the county, and plaintiff's payment of the back taxes resulted in issuance of a redemption certificate. *Id.*

Citing cases from several other jurisdictions, *see, e.g., Pueblo de Taos v. Gusdorf,* 50 F.2d 721, 723–24 (10th Cir.1931) (stating payment to redeem from tax sale to county did not meet requirement to pay taxes under adverse possession statute); *Robertson v. Bachmann,* 352 Ill. 291, 185 N.E. 618, 619–20 (1933) (same); *Kennedy v. Anderson,* 88 Wash. 457, 153 P. 319, 321 (1915) (holding taxes must be paid in successive years), the supreme court stated, "[S]uch redemption does not meet the requirement of statutes which require payment of taxes as an incident to the acquisition of title by adverse possession." *Bowen,* 268 P.2d at 984. The court based this rule on its interpretation of section 78–12–12's language, noting

> "[p]ayment of taxes" and "redemption of taxes" have two separate and well defined meanings; redemption is not "payment" because it is only where the taxes have not been "paid" that there is a forfeiture and any need for redemption; a payment made after the land has been sold for taxes is not made to discharge a claim for taxes but to redeem the land from the sale and reinvest the owner with legal title.

*Id.* at 985 (footnotes omitted).[5]

Because *Bowen* controls, we must hold that the trial court incorrectly deter-

4. *Bowen* may appear to be distinguishable from the case at bar because plaintiff's predecessors in interest in *Bowen* had originally obtained a tax title to the land from the county. *See Bowen v. Olson,* 268 P.2d 983, 983 (Utah 1954). However, that fact is peripheral to the court's opinion in *Bowen,* which focused solely on plaintiff's adverse possession theory and specifically dealt with the tax requirement of § 78–12–12—the very same statute involved here. *See id.* at 984–86. The court's analysis did not even mention the original tax sale to plaintiff's predecessors in 1943, but addressed only whether plaintiff's redemption of the land from a preliminary tax sale to the county in 1947 or 1948 constituted paying taxes for adverse possession purposes under § 78–12–12. *Id.*

5. We are not particularly impressed with this analysis. Although, technically, redemption and payment of taxes are not the same thing, practically speaking, redemption from the preliminary sale to the county is nothing more than a late payment. The *Bowen* court seems to have placed inordinate importance on this wordplay. Also, as we discuss beginning in the next paragraph, the court's policy reason for this rule is questionable, especially in this case. However, because the operative facts of *Bowen* are on-point with the operative facts of this case, we must apply its rule.

The policy underlying the *Bowen* rule was stated by the court as follows:

> [B]y paying taxes on the land a public record is made which gives notice to the owner that his land is being claimed adversely. This purpose cannot be fulfilled if the possessor can wait any number of years, even up to the necessary seven, and then pay the taxes in one lump sum by redeeming. Under such circumstances the owner would get no current notice of adverse claims against his property, and may not until it is too late to do anything about it. ·

*Bowen,* 268 P.2d at 985.

This notice policy is not entirely compelling for two reasons. First, specific to this case, because the Kearls were not listed as owners on county records and thus were not assessed taxes on either the twenty-five-foot strip or the New Hope Property, they would not have received notice of adverse claims through payment of property taxes by Johnson. Second, generally, those purporting to own land—in this case, the Kearls—are already "on notice" that they should be paying property taxes to maintain their ownership of that land. They should know that if they are not properly paying property taxes and are not in possession of the land someone else—the county or an adverse possessor—could be laying claim to their land. Although the latter reason may seem to cut against ·the Kearls' claim to the twenty-five-foot strip, it is stated only as an example of the weakness of notice as a policy basis for requiring timely payment of taxes by the adverse claimant during the entire seven-year adverse possession period. However, as we observe in footnote six, we are more concerned with the strength of the Martins' claim, not the weakness of the Kearls' claim. Also, other elements of adverse possession are more likely to serve the purpose of giving notice in any case.

Two other more sound policy bases for the rule may be stated as follows: First, because of the

mined Western's payment of property taxes on the twenty-five-foot strip fulfilled the tax requirement of section 78–12–12. The twenty-five-foot strip thus belongs to the Kearls.[6] Accordingly, we reverse.

ORME, P.J., and DAVIS, Associate P.J., concur.

gravity of adverse possession claims—wresting title from otherwise rightful owners—claimants must strictly comply with all requirements. *See* 10 George W. Thompson, *Thompson on Real Property* § 87.01, at 81–82 (David A. Thomas ed. 1994); Edward L. Montgomery, *The Adverse Possession of Land Titles in Utah*, 3 Utah L.Rev. 294, 310 (1953); 2 C.J.S. *Adverse Possession* § 5 (1972). This compliance includes *timely* payment of "all taxes which have been levied and assessed upon such land according to law," Utah Code Ann. § 78–12–12 (1992). And, second, the tax payment requirement should not reward "one who claims the benefits of ownership without fulfilling his obligation to the community of [timely] paying taxes." 7 Richard R. Powell & Patrick J. Rohan, *Powell on Real Property* ¶ 1013[2], at 91–68 (1996).

6. The Martins contend that, because the Kearls did not notify the county that the parcel was severed into two segments so that the county could separately assess the twenty-five-foot strip and because the Kearls made no attempt to pay the taxes themselves, the Kearls are somehow at fault and foreclosed from defending this adverse possession action. However, "[p]laintiffs must succeed on the strength of their own claim and not alone on the weakness of the defendants' claims in order to succeed." *Lyman v. National Mortgage Bond Corp.*, 7 Utah 2d 123, 127, 320 P.2d 322, 325 (1958). The Kearls failure to show they occupied the twenty-five-foot strip or paid taxes on it does not "bar their rights to recover the property where ... plaintiffs have failed to establish any valid claim or right to the property in themselves," *id.*