P. Calvin ROBERTS, Ruth Laubmeier, Rosalie Regina Wilson, Anna Eleanor Long, Donald Milton Kelius, Franklin David Kelius, and Ray Kelius

v.

ESTATE OF Ruth PURSLEY, Mellon Bank Central NA, Executor, Dorothy F. Messerly, Forney D. Winner and Mary E. Winner, Their Heirs, Executors, Administrators and Assigns, and any Persons Known or Unknown Claiming Any Right, Title, Lien or Interest in the Subject Premises Through or Under Them.

Appeal of Constance KEHOE, Administratrix for the Estate of Dorothy F. Messerly.

P. Calvin ROBERTS, Ruth Laubmeier, Rosalie Regina Wilson, Anna Eleanor Long, Donald Milton Kelius, Franklin David Kelius, and Ray Kelius

v.

ESTATE OF Ruth PURSLEY, Mellon Bank Central NA, Executor, Dorothy F. Messerly, Forney D. Winner and Mary E. Winner, Their Heirs, Executors, Administrators and Assigns, and any Persons Known or Unknown Claiming any Right, Title, Lien or Interest in the Subject Premises Through or Under Them.

Appeal of John PURSLEY.

Superior Court of Pennsylvania.

Argued Sept. 3, 1998.
Filed Oct. 16, 1998.
Reargument Denied Dec. 18, 1998.

Scott T. Williams, Williamsport, for Constance Kehoe.

John A. Pursley, pro se.

Charles R. Rosamilia, Jr., Lock Haven, for Roberts, Laubmeier, Wilson, Long and Kelius, participating parties.

George W. Pedlow, III, pro se.

Before JOYCE and HESTER, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

Constance Kehoe and John Ardell Pursley appeal from the order entered in the Court of Common Pleas of Clinton County denying their motions for reconsideration of the trial court's decree dated November 6, 1997, in which the trial court entered judgment in favor of Appellees, P. Calvin Roberts, et al. We affirm.

The convoluted history of this litigation began in March of 1992[1] when Appellees filed an action to quiet title to certain parcels of property located in Clinton County.[2] Following a hearing on October 2, 1995, in which extensive testimony was given by witnesses for both parties, the trial court held that Appellees established *prima facie* evidence of fee simple ownership, which entitled them to possession of the property. As a result, the court ordered that Appellants would be forever barred from claiming any interest in the property unless they commenced an ejectment action within thirty days.

Appellants filed an ejectment action on November 6, 1995, to which Appellees filed preliminary objections for failure to comply with the form required by Pennsylvania Rules of Civil Procedure 1022 and 1054. *See* Pa.R.C.P. 1022 (requiring that every pleading be divided into paragraphs numbered consecutively and that each paragraph contain only one material allegation). *See also* Pa.R.C.P. 1054(a) (requiring that a plaintiff in an ejectment action describe the land in his complaint). Appellants were ordered to file an amended ejectment action that conformed to the Pennsylvania Rules of Civil Procedure.[3]

In response to Appellants second amended complaint, Appellees filed a motion for summary judgment, raising the defenses of *res judicata* and collateral estoppel. Appellees also filed a motion for judgment on the pleadings, whereby they alleged procedural defects in Appellants' second amended complaint in ejectment. The trial court, on July 23, 1996, filed a final decree dismissing Appellants' second amended complaint in ejectment with prejudice and barring Appellants from claiming any interest in the subject premises.

On August 13, 1997, Appellants filed an appeal from the trial court's final decree. A prior panel of this court reversed the trial court's order and remanded the case with instructions to rule on the ejectment action set forth by Appellants. *Roberts v. Estate of Pursley*, 700 A.2d 475 (Pa.Super.1997). The trial court held a hearing on the merits of the ejectment action on October 3, 1997. On November 6, 1997 the trial court issued its order, finding against Appellants "based solely upon the provisions of the Pennsylvania Recording Act."[4]

1. A prior action involving the same parcel and the same parties or their predecessors was voluntarily discontinued in 1976.

2. The parcels at issue are the Robert and James Devling parcel containing 233.8 acres and the James Moore parcel containing 96 acres in Thomas Willing Warrants 3476 and 3495, excepting and reserving the following two parcels:

 a. That certain piece, parcel and tract of land conveyed in September 1915 in Clinton County Deed Book 89, Page 492, and
 b. That portion of said parcels acquired by Fourney D. Winner and Mary E. Winner, his

wife, through a prior Action to Quiet Title filed in Clinton County to No.46 January Term, 1968, and being Tract P/3, 45 acres, Thomas Willing Warrant No. 3495.

3. After filing their amended complaint, Appellants filed a motion for the court to grant leave to amend this amended complaint. The court granted this motion; accordingly, Appellants filed a second amended complaint.

4. However, in its opinion, the trial court pointed out that it was impressed with the magnitude of research conducted by Appellants with respect to the Warrant in issue.

Appellants raise the following issues for our consideration:

(1) Whether the trial court erred in applying the Pennsylvania Recording Statute/*Bona fide* Purchaser to the facts of this case?

(2) Whether the trial court erred by considering the Pennsylvania Recording Statute/*Bona fide* Purchaser Doctrine when Appellees failed to raise the aforesaid defenses at trial?

(3) Whether the record supports the Trial Court's conclusion that Appellees had no constructive or express notice of Appellants' claim?

The record indicates that Appellants were able to trace their line of title back to 1854 and the original Keating/Willing Warrant. According to the record, the Appellees' line of title was traced through a different chain back to the Keating/Willing Warrant. However, in 1901, there was a flaw in Appellees' chain of title due to an ineffective conveyance between their predecessors-in-interest.

With respect to Appellees' predecessors, the record indicates that in 1964, Milton S. Kelius and Mary Kelius purchased the parcel in dispute. In that same year, the Keliuses properly recorded their deed as prescribed by the Pennsylvania Recording Statute.[5] The Keliuses subsequently devised the parcel in dispute to Appellees, who recorded the parcel in 1975.

The trial court determined that Appellants' chain of title dates back to 1854 and that Appellees failed to establish their title prior to 1901. The trial court then concluded that Appellees did not prove their predecessors ever acquired title to the acreage contained within the said Warrant. In so concluding, the trial court held that, but for the Pennsylvania recording statute, Appellants established their claim to title by a preponderance of the evidence.

 Preliminarily, we note that appellate review of an equity matter is limited to a determination of whether the chancellor committed an error of law or an abuse of discretion. *Soderberg v. Weisel*, 455 Pa.Super. 158, 687 A.2d 839 (1997); *Marchetti v. Karpowich*, 446 Pa.Super. 509, 667 A.2d 724 (1995). The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. *Soderberg, supra*; *Hostetter v. Hoover*, 378 Pa.Super. 1, 547 A.2d 1247 (1988). However, "conclusions of law or fact, being derived from nothing more than the chancellor's reasoning from underlying facts and not involving a determination of credibility of witnesses are reviewable." *Sprankle v. Burns*, 450 Pa.Super. 319, 322, 675 A.2d 1287, 1288 (1996) (quoting *Krosnar v. Schmidt Krosnar McNaughton Garrett Co.*, 282 Pa.Super. 526, 534, 423 A.2d 370, 375 (1980)).

Appellants' first contention is that the trial court erred in applying Pennsylvania's recording statute, 21 P.S. § 351,[6] to the facts in this case asserting that such application is retroactive and illegal. *See* 21 P.S. § 351. Appellants cite *Farmers National Bank and Trust Co. of Reading v. Berks County Real Estate Co.*, 333 Pa. 390, 5 A.2d 94 (1939), in support of this contention. In that case, our supreme court held that section 351, as

---

5. It is important to note that, with the exception of the Treasurer's sale and Commissioner's sale ledger, the only recorded document that would establish record notice to Appellees is a 1914 conveyance of a one-third interest in 300 acres of land. Significantly, however, this recorded document does not identify the warrant as the Willing Warrant 3476. Moreover, the 1896 and 1924 Treasurer's Sale Deeds to Appellants' predecessors were not recorded until 1967. This leaves a gap of nearly 113 years where Appellants' predecessors failed to properly record their deed. Moreover, the record indicates that until the commencement of this litigation, Appellants had little or no involvement with the parcels in dispute.

6. Section 351 states in pertinent part:

Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded ... shall be adjudged fraudulent and void as to any subsequent *bona fide* purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded ... before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. 21 P.S. § 351.

amended in 1931 as to make unrecorded deeds invalid against subsequent judgment creditors, did not apply to deeds executed prior to 1931. *Farmers National Bank and Trust Co. of Reading*, 333 Pa. at 393, 5 A.2d at 94. In effect, the court held that retroactive application of section 351 is not permitted. *Id.*

Notwithstanding the fact that section 351 is not to be applied retroactively, the Pennsylvania recording statute applies to the present case pursuant to 21 P.S. § 444, enacted in 1775 and amended in 1893. Section 444 requires "[a]ll deeds made in the state to be acknowledged and recorded within ninety days." 21 P.S. § 444. Deeds not conforming to this rule will be "adjudged fraudulent and void against any subsequent purchaser ... for valid consideration." *Id.* As evidenced by its language and its similarities to section 351, section 444 was also enacted to protect *bona fide* purchasers against "deceptious appearance of title." *See Mancine v. Concord–Liberty Savings and Loan Ass'n*, 445 A.2d 744, 299 Pa.Super. 260 (1982) (holding that the primary objective in recording deed is to give public notice in whom the title resides so that no one may be defrauded by deceptious appearance of title). Moreover, we adopt the theory that sections 351 and 444 of Title 21 must be read together. *See Miners National Bank of Wilkes–Barre v. Kuhns*, 32 Luz. L.Reg.Rep. 185, (1937).

The facts of this case involve Appellees predecessors in title, who purchased parcel of land for value and without notice of Appellants' adverse interest in such parcel. Because sections 351 and 444 are both intended to provide the same protections to *bona fide* purchasers, and in light of the fact that the sections must be read together, we hold that the trial court was correct in applying the Pennsylvania recording statute to the facts of this case. *Miners National Bank of Wilkes–Barre, supra* ; *Mancine, supra.*

Next, Appellants contend, citing *Kaiser Energy Inc. v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 113 Pa.Cmwlth. 6, 535 A.2d 1255 (1998), that the *bona fide* purchaser concept does not apply to the facts of the present case because Appellees' grantor did not possess legal title. In *Kaiser, supra*, the Commonwealth Court held that "[t]he *bona fide* purchaser concept applies only to purchasers of legal title." *Id.* at 1258 (citing 32 P.L.E. Sales of Realty § 156 (1960)). The Commonwealth Court's decision in *Kaiser, supra*, is not binding on this court. Moreover, we do not find the Commonwealth Court's decision instructive; in fact, we find the Commonwealth Court's argument inconsistent with the *bona fide* purchaser concept contained within the recording statute of this Commonwealth.

The recording statute was intended to protect *bona fide* purchasers who give value for land. *Long John Silver's Inc. v. Fiore*, 255 Pa.Super. 183, 190, 386 A.2d 569, 573 (1978) (citing *Lund v. Heinrich*, 410 Pa. 341, 189 A.2d 581 (1963)). In order to qualify as a *bona fide* purchaser, the subsequent buyer must be without notice of a prior equitable interest. *Id.*

If "legal title," within the Appellant's definition, were required for a subsequent purchaser to qualify as a *bona fide* purchaser, the recording statute would not further its intended goals. For instance, in the typical recording statute situation, a grantor sells land to a grantee who does not record the deed; then, a subsequent buyer purchases the same land from the same grantor as the original grantee and this subsequent grantee records his deed before the first grantee. The subsequent grantee does not have "legal title" within the Appellant's definition because at the time the land was sold to him, the grantor did not have legal title to give such right. Yet, notwithstanding the fact that he does not have "legal title," he is a *bona fide* purchaser if at the time of the sale he was without notice of an adverse interest and value was given for the purchase of the land. *See Long John Silver's, supra.* As evidenced here, imposing a requirement of "legal title" to the definition of a *bona fide* purchaser would nearly render the recording statute useless. We, therefore, find no merit in Appellants' argument.

Appellants' next contention is. that Appellees cannot be protected under the recording statute because they inherited the disputed

land parcel from their predecessors-in-interest. In support of this contention, Appellants cite *U.S. v. 137.02 Acres of Land,* 334 F.Supp. 1021 (M.D.Pa.1971). There, the United States District Court for the Middle District of Pennsylvania held that "[h]eirs, who have given nothing of value in return for title, are not in the position of *bona fide* purchasers, mortgagees, and judgment creditors." *Id.* at 1024. Even though this is a correct rule of law, the trial court did not err by failing to apply it in the present case.

◼ In *Thompson v. Christie,* 138 Pa. 230, 20 A. 934 (1890), our supreme court pointed out that "[i]t is well settled that a *bona fide* purchaser, without notice of a secret agreement or trust, takes title discharged from such agreement or trust, and that he can convey good title even though his vendee has had actual notice." *Thompson,* 138 Pa. at 249, 20 A. at 934 (citations omitted); *see also* 77 Am.Jur. 2D *Vendor and Purchaser* § 509 (stating that "[g]enerally, a remote purchaser of real estate whose purchase does not fulfill all the requisites for protection due a *bona fide* purchaser may nevertheless be accorded protection because of a purchaser who is entitled thereto") (citations omitted). Essentially, our supreme court's holding in *Thompson, supra,* extended *bona fide* purchaser protection to vendees who purchase land from a *bona fide* purchaser vendor, even where the vendee has notice of adverse interests in the property. The purpose of this rule is to "prevent a stagnation of property and to protect the first purchaser, who, being entitled to hold and enjoy, must be equally entitled to sell." 77 Am.Jur. 2D *Vendor and Purchaser* § 509 (citations omitted).

◼ Under the aforesaid rationale, we extend protection to devisees and heirs who take from a *bona fide* purchaser. The purpose here is not to protect the heir or devisee, but to permit the *bona fide* purchaser to convey his land. Moreover, the application of this principle to heirs and devisees will further the policy of preventing the stagnation of property as well as the policies surrounding the *bona fide* purchaser concept. *Long John Silver's, supra.* We are not, however, extending protection to heirs and devisees who take from one who has not acquired

status as a *bona fide* purchaser. Extending such protection would not further the underlying purpose of the recording statute and the *bona fide* purchaser doctrine. *See Mancine, supra* ; *Long John Silver's, supra.*

◼ In the present case, the record indicates that Milton S. Kelius and Mary Kelius, Appellees' predecessors-in-interest, were *bona fide* purchasers for value without notice of Appellants' predecessors' claim. The record further indicates that, in 1964, the Keliuses recorded their deed in accordance with the Pennsylvania recording statute. In 1975, the parcel in dispute was devised to Appellees from the Kelius estate. At that time, Appellees properly recorded ·their interest. In accordance with the principle set forth above, Appellees acquired their interest subject to the protection afforded to their predecessors as *bona fide* purchasers. Because the Keliuses acquired title superior to that of Appellants' predecessors, Appellees have, therefore, acquired title superior to that of the Appellants.

Appellants argue pursuant to *Long John Silver's, supra,* that, because Appellants and Appellees did not purchase the land from a common grantor, Appellees cannot be *bona fide* purchasers for purposes of the recording statute. Appellants misconstrue the *Long John Silver's* decision.

◼ In their brief, Appellants quote the following excerpt from *Long John Silver's* :

At common law, the first buyer's deed was superior to subsequent deeds to the property conveyed by the same grantor, regardless of whether the first deed was without consideration and the subsequent deed was to a *bona fide* purchaser. The Pennsylvania recording statute, however, protects subsequent purchasers by giving a subsequent purchaser for value without notice of prior transaction priority over the equitable estate of the first owner.

*Long John Silver's,* 255 Pa.Super. at 190, 386 A.2d at 572–73. The language in the foregoing quote does not suggest that in order for the Pennsylvania recording statute to apply, the two parties in dispute must have received their interest from a common grantor. It merely demonstrates a situation where the

recording statute applies. On its face, the Pennsylvania recording statute does not specify whether parties in dispute must have acquired their land from a common grantor. *See* 21 P.S. § 444. Furthermore, in *Farmer v. Fisher*, 197 Pa. 114, 118, 46 A. 892, 893 (1900), our supreme court specifically held, "[w]hen ... cases speak in this connection of deeds from the same grantor, they do not mean necessarily from the same person, but deeds purporting to convey the same title, whether by grantor, his heir, his heir's grantee or any other person in the devolution of the same line of title." *Id.*

In light of the supreme court's decision in *Fisher, supra,* and taking into consideration the language of the recording statute, it is clear that Appellants' interpretation of *Long John Silver's, supra,* is erroneous. Furthermore, in the present case, the disputed deeds purport to convey the same title, thereby making it clear that the recording statute is applicable. *See Fisher, supra.* Therefore, the trial court acted properly by applying the Pennsylvania recording statute to the facts of this case.

Appellants next contend that the trial court erred by ruling that Appellants did not comply with the Pennsylvania recording statute. Appellants argue they were in compliance with the statute because record of title to the land was recorded in the Prothonotary's Book of Treasurer's Acknowledgements of Unseated Lands, thereby giving constructive notice of their predecessors' interest in such parcel.

■ The Pennsylvania Supreme Court has held:

> [i]t is well settled that purchasers ... of real estate are affected not only by matters of which they had actual knowledge and by what appeared in the office of the recorder of deeds and in the various courts of record whose territorial jurisdiction embraced the land in dispute, but as well 'by what they could have learned by inquiry of the person in possession and of others, who they had reason to believe, knew of facts which might affect title.'

*Sidle v. Kaufman,* 345 Pa. 549, 557, 29 A.2d 77, 81 (1942) (quoting *Salvation Army Inc. Trustees v. Lawson,* 293 Pa. 459, 463, 143 A. 113, 114 (1928)). However, a purchaser will not be prejudiced by facts, which he could not have learned by inquiry. *Salvation Army Inc. Trustees,* 293 Pa. at 462, 143 A. at 114 (citing *Lowers Appeal,* 1 Walk 404, 5 Leg.Gaz. 45 (1873)).

■ According to the record in the present case, both parties agree that the office of the Recorder of Deeds does not contain any record of an interest adverse to that of Appellees. In fact, Appellants' predecessors failed to record their deed for nearly 113 years. Moreover, Appellees and their predecessors had no reason to know, up until the time of this litigation, of any person in possession, or of any person who might know of facts that may have affected their title. Appellees had no reason to know of the record contained in the Prothonotary's Book of Treasurer's Acknowledgements of Unseated Lands, and it is not likely that inquiry would have led to such knowledge. Therefore, Appellants' argument that Appellees had constructive knowledge due to the record of the Treasury Deed lacks merit and the trial court correctly held that Appellees and their predecessors were without notice of Appellants' adverse interests.

■ With respect to their next issue, Appellants contend that Appellees failed to raise in their pleadings, the issues of notice and *bona fide* purchaser. Appellants argue that such defenses were waived at trial because Appellees failed to raise such defenses in their preliminary objections, answer or reply in the trial court proceedings. *See* Pa.R.C.P. 1032. We disagree.

Rule 1032 states in pertinent part that "[a] party waives all defenses and objections which he does not present either by preliminary objection, answer or reply...." Pa. R.C.P. 1032. Instantly, Appellees have complied with this Rule, as they specifically stated in paragraphs 11, 12, and 13 of their answer to Appellants' amended complaint that "the chain of title of the [Appellants] is defective in that they did not record their deed in a prompt manner, and delayed recording until after the recording of the [Appellees'] title which gave the [Appellees] superior title to the subject property." This

denial was stated in response to Appellants' allegation that Appellants had been in possession of the disputed parcel of land since 1896.

We note that embodied within the recording statutes are provisions that require a deed to be recorded in a prompt manner and if the deed is not recorded within the prescribed time period it will be "adjudged fraudulent and void against any subsequent purchaser ... for valid consideration." *See* 21 P.S. § 444. Moreover, and as stated above, the purpose of the recording statutes is to protect *bona fide* purchasers. *See Mancine, supra.* As such, Appellees pleaded sufficient facts in their denial of Appellants' allegations as set forth above so as to bring the case within section 444. Thus, Appellees satisfied the Rule 1032 requirements and did not waive their defenses under the Pennsylvania recording statute. Appellant's argument, therefore, is without merit.

■ Appellant's final claim is that the record lacks any evidence supporting the trial court's determination that Appellees had no actual or constructive notice of Appellants' adverse interests. We disagree. As stated above, the record contains a voluminous history of the land tract in issue dating back as far as 1854. It clearly shows that Appellants' predecessors had failed to record for approximately 113 years, finally recording in 1967. It further illustrates that Appellees' predecessors properly recorded in 1964, after purchasing the land for value. The fact that Appellants' predecessors failed to record their deed for more than a century, when the statute requires recording within 90 days, is clearly enough evidence for the trial court to have determined that Appellees failed to have notice of Appellants' adverse interests. 21 P.S. § 444.

Order affirmed.