2002 UT App 257

**SALT LAKE COUNTY, a body corporate and politic of the State of Utah, Plaintiff and Appellant,**

v.

**METRO WEST READY MIX, INC., a Utah corporation; and Monterra Rock Products, Inc., a Utah corporation, Defendants and Appellees.**

No. 20010276–CA.

Court of Appeals of Utah.

Aug. 1, 2002.

Donald H. Hansen, Salt Lake County Attorney's Office, Salt Lake City, for Appellant.

Mark Clements, Mark F. James, and Mark H. Richards, Hatch & James PC, Salt Lake City, for Appellees.

Before Judges BENCH, GREENWOOD, and ORME.

## OPINION

GREENWOOD, Judge.

¶ 1 Salt Lake County (the County) appeals the trial court's grant of Metro West Ready Mix, Inc.'s (Metro) motion for summary judgment. The judgment granted Metro quiet title to Parcel G (the Property) on the basis that Metro was a bona fide purchaser (BFP) under Utah Code Ann. § 57–3–102, –103 (2000) (the Recording Statute). We affirm.

## BACKGROUND

¶ 2 In 1878, the United States Government conveyed the Property by land patent to William Turner. Turner recorded his patent in Salt Lake County, even though the Property is located entirely within Utah County. The Property's northern border is the Utah County/Salt Lake County line. In 1878, Turner conveyed the Property to the County by warranty deed. The County immediately recorded the warranty deed in Salt Lake County, but more than 120 years passed before the County recorded the warranty deed in Utah County in 1998.

¶ 3 Nine years before the County recorded in Utah County, Metro became interested in acquiring the Property to further its business interests. Metro principals approached the Tingeys, who were reputed to be the owners of the Property, and inquired as to the purchase price. The Tingeys represented that the Property had been in their family since the turn of the century, and a title search Metro conducted indicated that the Property

had no record owner in Utah County. Furthermore, the Tingeys were in possession of the Property and neither the County nor anyone else had posted any signs or carried on any activities that would indicate that anyone other than the Tingeys owned the Property. The Tingeys conveyed the Property to Metro by quitclaim deed for $25,000 on April 14, 1989. Metro promptly recorded its quitclaim deed in Utah County, and incorporated the Property into its gravel pit operations on adjacent land owned by Metro.

¶ 4 Shortly after discovering the competing interests in the Property, the County filed an action to quiet title. Metro filed a motion for summary judgment, arguing that Metro was entitled to BFP protection under the Recording Statute. The trial court granted Metro's motion and this appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶ 5 The dispositive issue on appeal is whether the trial court correctly granted Metro's motion for summary judgment, holding that Metro is a BFP meriting protection under the Recording Statute even though the Tingeys never had legal title [1] to the Property. We review a trial court's summary judgment ruling for correctness, affording no deference to the trial court's conclusions of law. *See Peterson v. Coca–Cola U.S.A.*, 2002 UT 42, ¶ 7, 446 Utah Adv. Rep. 27, 48 P.3d 941. Summary judgment is appropriate only if "there is no genuine issue as to any material fact." Utah R. Civ. P. 56(c).

## ANALYSIS

¶ 6 The Recording Statute reads in part as follows:

Each document not recorded as provided in this title is void as against any subsequent purchaser of the same real property, or any portion of it, if:

(1) the subsequent purchaser purchased the property in good faith and for a valuable consideration; and

(2) the subsequent purchaser's document is first duly recorded.

Utah Code Ann. § 57–3–103 (2000). Although the plain language of section 57–3–103 does not specifically require that the subsequent purchaser take title without notice of prior conveyances, Utah courts have included this element as inherent in the good faith requirement. *See Ault v. Holden*, 2002 UT 33, ¶ 31, 44 P.3d 781; *Johnson v. Higley*, 1999 UT App 278, ¶ 24, 989 P.2d 61. Furthermore, this court has stated that the purpose of the Recording Statute "is not to make the transfer of property effective as between the parties, but to protect the purchaser's interest against the asserted interest of any third parties, and to inform third parties of the existence of pre-existing encumbrances on the property." *Horman v. Clark*, 744 P.2d 1014, 1016 (Utah Ct.App. 1987) (citations omitted). However, the issue of whether a subsequent purchaser may obtain BFP protection when his or her grantor never had legal title to the property is an issue of first impression in Utah. We therefore begin our analysis by looking to other jurisdictions to find the rule most in harmony with existing Utah law.

¶ 7 The County urges us to adopt a historic approach followed by many courts. Under the historic approach,

The doctrine of bona fide purchaser without notice does not apply where the purchaser buys no title at all. If he buys from one who has title, and it should afterwards appear that another had a better title which he had not recorded, or that there was a fraud in the title of which he had no notice, the purchaser would be protected. But this doctrine cannot apply where no title whatever existed in the vendor. The good faith of a purchaser cannot create a title.

*Dodge v. Briggs*, 27 F. 160, 166–67 (C.C.S.D.Ga.1886) (emphasis omitted); *see also Iowa Land & Trust Co. v. United States*, 217 F. 11, 13 (8th Cir.1914) ("The equitable doctrine of a bona fide purchaser without notice does not apply where there is a total absence of title in the vendor. The

---

1. As used in this opinion, the term "legal title" means title superior to all others, based on real property legal principles other than the Recording Statute. It is also the term used in several of the opinions cited herein.

good faith of a purchaser cannot create a title where none exists."); *Lindblom v. Rocks*, 146 F. 660, 663 (9th Cir.1906) (same); *Kaiser Energy, Inc. v. Department of Envtl. Res.*, 113 Pa.Cmwlth. 6, 535 A.2d 1255, 1259 (Pa. Commw.Ct.1988) ("It is axiomatic that a person cannot effectively convey property in which he has no ownership rights. The bona fide purchaser concept applies only to purchasers of *legal title*."); *Cook v. Eller*, 298 S.C. 395, 380 S.E.2d 853, 854 (1989) ("An individual cannot claim bona fide purchaser status if his grantor never had title to the property."). Therefore, under the historic approach, BFP protection does not apply when a grantor lacks legal title because "[the purchaser's] good faith cannot create title" where none exists. *Lindblom*, 146 F. at 663.

¶8 However, as Metro points out, some modern courts have rejected the historic approach because of its logical inconsistencies when juxtaposed against the plain language of race-notice recording statutes that are similar to Utah's. For example, in *Roberts v. Estate of Pursley*, 718 A.2d 837 (Pa.Super.Ct.1998), the appellants had an unbroken chain of title back to 1854, whereas the appellees' chain of title was broken in 1901. *See id.* at 840. Despite the appellees' broken chain of title, the appellees' predecessor in interest recorded first. *See id.*

¶9 Although appellants could trace their legal title to 1854, the court held in favor of appellees under the BFP doctrine. Based on the Pennsylvania recording statute, the court reasoned:

> If "legal title," within the Appellant[s'] definition, were required for a subsequent purchaser to qualify as a bona fide purchaser, the recording statute would not further its intended goals. For instance, in the typical recording statute situation, a grantor sells land to a grantee who does not record the deed; then, a subsequent buyer purchases the same land from the same grantor as the original grantee and this subsequent grantee records his deed before the first grantee. The subsequent grantee does not have "legal title" within the Appellant[s'] definition because at the time the land was sold to him, the grantor did not have legal title to give such right.

> Yet, notwithstanding the fact that he does not have "legal title," he is a bona fide purchaser if at the time of the sale he was without notice of an adverse interest and value was given for the purchase of the land. As evidenced here, imposing a requirement of "legal title" to the definition of a bona fide purchaser would nearly render the recording statute useless. We, therefore, find no merit in Appellants' argument.

*Id.* at 841 (citations and emphasis omitted). Therefore, under this view, the historical approach is illogical because the traditional recording act hypothetical does not require the seller to have legal title in order for the subsequent purchaser to receive BFP protection.

¶10 Despite the historical approach's logical inconsistencies, the County argues that reading the Recording Statute in the manner adopted in *Roberts* creates "absurd consequences" by contradicting the purposes of the Recording Statute and sanctioning fraud in land conveyances. *See State v. Redd*, 1999 UT 108, ¶12, 992 P.2d 986 (stating that courts avoid interpreting statutes in such a manner as to render absurd consequences). The County's argument is compelling because the *Roberts* rationale fails to acknowledge that the Recording Statute was not enacted for the purpose of making otherwise worthless transactions effective as between the parties. *See Horman*, 744 P.2d at 1016. However, the reasoning in *Roberts* exposes the flaw of the historical approach. Thus, both of the approaches heretofore discussed have logical and practical failings that make them inadequate to solve the question at issue in this case. For this reason, we examine the rationale of other courts in adopting a third alternative approach.

¶11 A number of courts have adopted the rule that a purchaser may obtain BFP protection if the grantor had apparent legal title, even if he or she did not have perfect legal title. *See, e.g., Muller v. Hallenbeck*, 200 Cal.App.2d 366, 19 Cal.Rptr. 251, 255 (1962) ("A bona fide purchaser is one who can prove possession of his grantor, the purchase of the property, and the payment of the purchase money in good faith and without notice, actu-

al or constructive."); *Montana Elec. Co. v. Northern Valley Mining Co.,* 51 Mont. 266, 153 P. 1017, 1018 (1915) (same); *First Nat'l Bank of Plattsmouth v. Gibson,* 60 Neb. 767, 84 N.W. 259, 260 (1900) (stating rule that purchaser acquires only title that his grantor had at time of sale, unless he bought and paid for property on faith of apparent owner, upon which he was legally justified in relying); *Smith v. Huff,* 164 S.W. 429, 431 (Tex. Civ.App.–Galveston 1914) (holding that purchaser could not have BFP status because grantor never had actual or apparent title to land).

¶ 12 Courts that have adopted the apparent title rule implement the Recording Statute without sacrificing a plain language reading. For example, in *Montana Electric,* the court defined a bona fide purchaser as:

> "One who at the time of his purchase advances a new consideration, surrenders some security, or does some other act which leaves him in a worse position if his purchase should be set aside, and *purchases in the honest belief that his vendor had a right to sell, without notice, actual or constructive,* of any adverse rights, claims, interest, or equities of others in and to the property sold."

153 P. at 1018 (emphasis added) (quoting *Foster v. Winstanley,* 39 Mont. 314, 102 P. 574, 579 (1909)). Thus, the purchaser must take title without notice that the grantor is in fact not the owner.

¶ 13 Courts applying the apparent title rule have analyzed several factors to determine whether the purchaser was without notice that the grantor did not have at least apparent title to the property. If the records are silent on ownership, courts have considered the following: (1) whether the purported owner claimed to own the property, *see Pender v. Bird,* 119 Utah 91, 224 P.2d 1057, 1059 (1950); (2) whether the purported owner possessed the property, *see Ault v. Holden,* 2002 UT 33, ¶ 42, 44 P.3d 781; *Muller,* 19 Cal.Rptr. at 255; and (3) whether there was any activity or indication on the property that would raise questions as to

who owned the property. *See First Am. Title Ins. Co. v. J.B. Ranch, Inc.,* 966 P.2d 834, 838 (Utah 1998) (stating party on inquiry notice where railroad poles, guy wires, and trolley wires on property subject to adverse claim).

¶ 14 We adopt the apparent title rule because it harmonizes the purposes of the Recording Statute. First, by recognizing the need for a grantor to have at least apparent title to make a valid conveyance, the Recording Statute does not validate sham conveyances. Second, it protects purchasers whose honest belief that the purported owner owns the property is supported by legally significant facts.

¶ 15 Applying the apparent title rule to this case, we conclude that the trial court was correct in extending BFP protection to Metro.[2] To determine whether Metro was legally justified in its belief that the Tingeys owned the Property, the threshold question is whether the records were silent as to ownership. Metro contends the records were silent regarding ownership because the Utah County Recorders Office had no record owner listed for the Property. The County argues, however, that Metro had a duty to inquire beyond the Utah County records, and had it done so, would have discovered that the Tingeys were not the owners. The Recording Statute states that if a document is recorded in the appropriate county, it provides notice to the world. *See* Utah Code Ann. § 57–3–102(1) (2000). No statute or Utah case requires a party to conduct investigation beyond the county records unless the party has knowledge of certain facts and circumstances requiring further inquiry. *See Johnson v. Higley,* 1999 UT App 278, ¶ 24, 989 P.2d 61. However, the facts and circumstances requiring further inquiry do not arise from records unless a statute so provides. *See First Am. Title Ins.,* 966 P.2d at 839 (holding road maps on file in county clerk's office did not provide constructive notice).

¶ 16 Since the Utah County records relevant to the Recording Statute were silent as

---

**2.** It is undisputed that Metro purchased the Property for value and recorded first. The only issue we address in regard to Metro's BFP status

is whether it had notice that the Tingeys did not have legal title to the Property.

to the owner, the apparent title approach requires that we address the secondary factors. First, the Tingeys asserted that the Tingey family had owned the Property since the turn of the century. Second, the Tingeys were in possession of the Property. Third, the County did not have any signs on the Property or carry out any activity that would lead Metro to believe that the Tingeys were not the owners. Therefore, applying this rule, Metro is entitled to BFP protection because it was legally justified in relying on the Tingeys' claims of ownership.[3]

## CONCLUSION

¶ 17 In sum, the trial court was correct in concluding that Metro was a BFP because Metro was legally justified in concluding that the Tingeys were the owners based on the lack of record evidence, the Tingeys' possession of the Property, and the County's failure to post signs or carry on any activity that would raise questions about the Tingeys' title to the Property. Accordingly, we affirm.

¶ 18 WE CONCUR: RUSSELL W. BENCH and GREGORY K. ORME, Judges.

3. Because we affirm the trial court based on the Recording Statute, we do not reach Metro's adverse possession argument.