2004 UT 23

**SALT LAKE COUNTY, Plaintiff and Appellant,**

v.

**METRO WEST READY MIX, INC., a Utah corporation, and Monterra Rock Products, Inc., a Utah corporation, Defendants and Appellees.**

No. 20020701.

Supreme Court of Utah.

March 23, 2004.

David E. Yocom, Don H. Hansen, Salt Lake City, for plaintiff.

Mark R. Clements, Mark H. Richards, Salt Lake City, for defendants.

DURRANT, Associate Chief Justice:

¶1 In this case we address whether a purchaser who obtains title to property through a wild deed can be a bona fide purchaser under Utah's Recording Statute.

¶2 The dispute at issue is between Salt Lake County (the "County") and Metro West Ready Mix, Inc. ("Metro West") over the ownership of Parcel G, a fifteen-acre piece of property located in Utah County near the border between Utah and Salt Lake Counties (the "Property"). The County received legal title to the Property on December 4, 1878; however, it failed to record its deed in the Utah County Recorder's Office until June 17, 1998.

¶3 Nine years before the County recorded its deed in Utah County, Metro West purchased the Property from the Property's purported owners. Metro West did so even though a record title search revealed that the owners had no record title to the Property. Metro West subsequently recorded its quitclaim deed in the Utah County Recorder's Office on April 14, 1989.

¶4 After learning of Metro West's claimed ownership, the County filed suit in 1999 to quiet title to the Property. The trial court found that Metro West was a bona fide purchaser under Utah's Recording Statute and granted summary judgment in favor of Metro West. The County appealed, and the court of appeals affirmed based on its newly-enunciated "apparent title rule." We reverse.

## FACTUAL BACKGROUND[1]

¶5 The United States Government conveyed the Property by land patent to William Turner in 1878. The Property is located in Utah County, with its northern border abutting the Utah County/Salt Lake County line. In 1878, Turner conveyed the Property to the County by warranty deed, which the County immediately recorded in Salt Lake County. In 1998, approximately 120 years

---

1. Many of the facts recited herein are taken from the court of appeals' opinion. *See Salt Lake County v. Metro West Ready Mix, Inc.*, 2002 UT App 257, ¶¶2–4, 53 P.3d 499.

later, the County recorded its warranty deed in Utah County.

¶ 6 Nine years before the County recorded its warranty deed in Utah County, Metro West's predecessor-in-interest, Lamona Farms, approached the purported owners of the Property, Darhl and Roena Tingey ("the Tingeys"), and inquired as to the purchase price. The Tingeys represented to Lamona Farms's owners that the Tingey family had been in possession of and had used the Property since the turn of the century. The Tingeys would only agree to convey the Property, however, by quitclaim deed. The Tingeys explained that they were unable to convey the Property by warranty deed due to a 1,000–foot discrepancy in the Property description. This discrepancy, the Tingeys claimed, was created when the state of Utah began staking its section markers at both the north and south ends of the state. The Utah County Recorder's Office confirmed this discrepancy.

¶ 7 Before purchasing the Property, one of Lamona Farms's owners and a title company both reviewed the records at the Utah County Recorder's Office and determined that nothing in the records conflicted with the Tingeys' ownership representations. It is undisputed, however, that the Utah County Recorder's Office never listed the Tingeys as owners of the Property, and that the Tingeys were strangers to the record title.

¶ 8 The Tingeys conveyed the Property to Lamona Farms by quitclaim deed on April 14, 1989, for $25,000. Lamona Farms promptly recorded its quitclaim deed in Utah County. In 1991, Lamona Farms transferred the Property to Monterra Rock Products, Inc., which merged two years later into Metro West.[2]

## PROCEDURAL HISTORY

¶ 9 In February 1999, the County filed an action to quiet title to the Property. Metro West filed a motion for summary judgment, arguing that it possessed legal ownership of the Property because (1) it was a bona fide purchaser under Utah's Recording Statute, see Utah Code Ann. § 57–3–103 (2000); (2) it had adversely possessed the Property under Utah's Adverse Possession Statute, see Utah Code Ann. §§ 78–12–7 to –13 (1996); and (3) principles of equity and public policy supported its ownership entitlement. The trial court granted Metro West's motion based upon Utah. Code section 57–3–103 and the "undisputed facts that [Metro West] purchased [the Property] for valuable consideration and in good faith, and recorded its deed in Utah County prior to any recording there by [the County]." The County appealed.

¶ 10 The court of appeals affirmed the trial court's decision. *Salt Lake County v. Metro West Ready Mix, Inc.*, 2002 UT App 257, 53 P.3d 499. In so doing, the court of appeals announced an "apparent title rule," under which a purchaser is entitled to bona fide purchaser protection where the records are silent with respect to ownership "if the grantor had apparent legal title, even if he or she did not have perfect legal title." *Id.* at ¶ 11. Apparent title, according to the court of appeals, is determined by considering. "(1) whether the purported owner claimed to own the property; (2) whether the purported owner possessed the property; and (3) whether there was any activity or indication on the property that would raise questions as to who owned the property." *Id.* at ¶ 13. Under this apparent title doctrine, the court of appeals reasoned that the trial court was correct in extending bona fide purchaser protection to Metro West because the records were silent as to the Tingeys' ownership; the Tingeys had asserted that they had owned the Property since the turn of the century; the Tingeys were in possession of the Property; and the County did not have any signs or carry out any activity on the Property that would lead Metro West to believe that the Tingeys were not the legal owners of the Property. *Id.* at ¶¶ 15–16. The County petitioned for certiorari review of the court of appeals' decision, which we granted pursuant to Utah Code section 78–2–2(5) (2002).

2. To avoid confusion, we hereinafter refer to Metro West's predecessors-in-interest simply as Metro West.

## STANDARD OF REVIEW

¶ 11 "When exercising our certiorari jurisdiction, we review the decision of the court of appeals, not of the trial court." *Mitchell v. Christensen*, 2001 UT 80, ¶ 8, 31 P.3d 572 (internal quotations omitted). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c). "[B]ecause a summary judgment presents questions of law, we accord no particular deference to the court of appeals' ruling" and review it for correctness. *Mitchell*, 2001 UT 80 at ¶ 8, 31 P.3d 572 (citing *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1385 (Utah 1989)).

## ANALYSIS

### I.   UTAH'S RECORDING STATUTE

¶ 12 The County argues that the court of appeals erred in holding that a purchaser is protected under Utah's Recording Statute when he is on notice that his grantor has no record title to the property conveyed. We agree.

¶ 13 Utah's Recording Statute provides as follows:

> Each document not recorded as provided in this title is void as against any subsequent purchaser of the same real property, or any portion of it, if:
>
> (1) the subsequent purchaser purchased the property in good faith and for a valuable consideration; and
>
> (2) the subsequent purchaser's document is first duly recorded.

Utah Code Ann. § 54–3–103 (2000).[3] To be in good faith, a subsequent purchaser must take the property without notice of a prior, unrecorded interest in the property. *See Ault v. Holden*, 2002 UT 33, ¶ 31, 44 P.3d 781. In addition, to be in good faith a subsequent purchaser must also take the property "without notice of any infirmity in his grantor's title." *Pender v. Bird*, 119 Utah 91, 96, 224 P.2d 1057, 1059 (1950); *see also Paldev-*

*co Ltd. P'ship v. City of Auburn Hills*, No. 202134, 1998 WL 1988569, *2, 1998 Mich. App. LEXIS 626, at *5 (Mich.Ct.App. Dec. 18, 1998) (unpublished per curiam decision) (noting "[a] good-faith purchaser is one who purchases without notice of a defect in the vendor's title" and that "[n]otice need only be of the possibility of the rights of another, not positive knowledge of those rights"). This notice is not confined to situations in which a subsequent purchaser has actual notice of an unrecorded interest or infirmity in the grantor's title. Rather, it includes circumstances where a purchaser has constructive notice of such information, including both (1) record notice " 'which results from a record or which is imputed by the recording statutes,' " and (2) inquiry notice " 'which is presumed because of the fact that a person has knowledge of certain facts which should impart to him, or lead him to, knowledge of the ultimate fact.' " *First Am. Title Ins. Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 837 (Utah 1998) (quoting 66 C.J.S. *Notice* § 6 (1950)).

¶ 14 The County argues that because a search of the Utah County records revealed that the Tingeys had no record title to the Property, Metro West was necessarily on inquiry notice of a defect in the Tingeys' title. According to the County, under this inquiry notice analysis the lack of record title would have led a reasonable person to have discovered the County's recorded title to the Property in the Salt Lake County Recorder's Office. Consequently, the County asserts that Metro West cannot be a good faith purchaser without notice under the recording statute.

¶ 15 We agree that the Tingeys' lack of record title put Metro West on notice of a defect in the Tingeys' title. However, we do so not because Metro West was on inquiry notice of the defect, but because Metro West had both actual and constructive record notice of the defect, which precluded it from taking the Property in good faith.

¶ 16 Because the Tingeys had no record title to the Property when they transferred it

---

3. Because this current section is identical to the code section applicable at the time the County filed its quiet title action, we cite the current code provision. *Compare* Utah Code Ann. § 57–3–3 (1994), *with* Utah Code Ann. § 57–3–103 (2000).

to Metro West, the conveyance was carried out through what is commonly referred to as a "wild deed." *See Poladian v. Johnson*, 85 So.2d 140, 140 (Fla.1955) (en banc) ("A 'wild deed' is one executed by a stranger to the record title...."); 11 *Thompson on Real Property, Thomas Edition*, § 92.11(c) (David A. Thomas ed., 1994) ("[A] 'wild deed' [is one] executed by a grantor with no record ownership of the interest...."). Few courts have addressed whether a purchaser who acquires title through a wild deed takes free of an unrecorded interest in the same property under the recording statutes. However, at least one commentator has expressly noted that a purchaser who takes title through a wild deed is not the type of purchaser that recording statutes protect. *See* Joyce Palomar, *Patton and Palomar on Land Titles*, § 10 (3d ed. 2003) ("[T]he term 'bona fide purchaser' as used in recording acts does not include one who buys from a stranger to the record."). And the majority of courts that have addressed the issue have held that a purchaser who receives property through a wild deed is not entitled to take free of an unrecorded interest simply by virtue of having recorded a purported conveyance of title executed by a stranger to the record title. *See Holland v. Hattaway*, 438 So.2d 456, 470 (Fla.Dist.Ct.App.1983) (noting that because "recording statutes do not support or validate a wild deed or any conveyance of an interest that the grantor does not have," an appellant whose chain of title traced back to the sovereign had superior interest over an appellee who could only trace title to a wild deed executed by a stranger to the record); *Zimmer v. Sundell*, 237 Wis. 270, 296 N.W. 589, 591 (1941) ("If one who has no title under the laws governing conveyances is to have a superior one under the recording acts, it should be because he has relied upon the record, and when he purchases from one who is a stranger to the record title he has no grounds for such reliance."). *But see Hyland v. Kirkman*, 204 N.J.Super. 345, 498 A.2d 1278, 1284, 1289, 1295–96 (Ct.Ch.Div. 1985).

▮ ¶ 17 We conclude that a purchaser whose chain of title is founded on a wild deed cannot be a bona fide purchaser under Utah's Recording Statute. As previously noted, to be in good faith a purchaser must purchase the property without notice of any defect or infirmity in the grantor's title. *Pender*, 119 Utah at 96, 224 P.2d at 1059. Because "[o]ne who deals with real property is charged with notice of what is shown by the records of the county recorder of the county in which the property is situated," *Crompton v. Jenson*, 78 Utah 55, 70, 1 P.2d 242, 247 (1931), and by implication charged with notice of what the records should show but do not, i.e., a lack of record title in a grantor, we hold that by definition a purchaser whose title is founded on a wild deed is on notice that his grantor had no record title to the property purportedly being conveyed. This is true in instances where, as in this case, the subsequent purchaser has obtained actual notice of this absence by searching the records. Moreover, it is also true even when the purchaser has no actual notice of the title defect, since all grantees of wild deeds are necessarily charged with constructive record notice by virtue of the recording statutes. Accordingly, a purchaser who acquires property through a wild deed will be held to have been on notice of a defect in his grantor's title and will not qualify as a subsequent purchaser in good faith for purposes of Utah's Recording Statute.

▮ ¶ 18 This is not to say that a purchaser who acquires property through a wild deed can never acquire good title. We merely hold that the recording statutes do not protect such a purchaser as against an unrecorded interest in the same. *See Huntington City v. Peterson*, 30 Utah 2d 408, 410, 518 P.2d 1246, 1248 (1974) (explaining that recording a deed does not pass title); *Horman v. Clark*, 744 P.2d 1014, 1016 (Utah Ct.App. 1987) ("The recording statute's purpose is not to make the transfer of property effective as between the parties...."). If a purchaser can establish that his grantor possessed and conveyed valid title to the property independent of the recording statutes, a conveyance through wild deed will be effective as against any competing claims.

¶ 19 Applied in this case, because the Tingeys had no record title to the Property, Metro West was on notice of a defect in the

Tingeys' record title and therefore did not purchase the Property in good faith for purposes of Utah's Recording Statute. As such, it is not a bona fide purchaser and is not entitled to quiet title to the Property as against the County's unrecorded interest simply because it recorded its purported title first. If, however, the Tingeys acquired valid title to the Property through a means not reflected by the record, such as through adverse possession, the Tingeys conveyed valid title and Metro West would be entitled to quiet title to the Property as against the County. Because the record is insufficient for us to determine whether the Tingeys had valid title to the Property, we remand for further proceedings consistent with this opinion.

## II. ADVERSE POSSESSION

¶ 20 Although not an issue reached by the trial court below, Metro West argues in the alternative that it is entitled to summary judgment because it established ownership of the Property through its own adverse possession. The County contends that not only do disputed material facts exist that preclude summary judgment in Metro West's favor, but that even if Metro West established all the necessary elements of adverse possession, Metro West is barred from acquiring title through adverse possession under Utah Code section 78–12–13 because the County designated the Property for a public use. *See* Utah Code Ann. § 78–12–13 (2000).

¶ 21 "[A]n appellate court may affirm a trial court's ruling on any proper grounds, even though the trial court relied on some other ground." *DeBry v. Noble*, 889 P.2d 428, 444 (Utah 1995). To do so, however, the facts established in the record must be sufficient to support the alternative ground. *See Renn v. Utah Bd. of Pardons*, 904 P.2d 677, 685 (Utah 1995).

¶ 22 In Utah, a person without legal title is deemed "to have been under and in subordination to" the owner with legal title unless that person has adversely possessed the property. Utah Code Ann. § 78–12–7 (2000). When an occupant has entered into possession of property under a claim of title, the occupant may establish adverse possession by demonstrating that (1) the property was "occupied and claimed for the period of seven years continuously," *id.* § 78–12–12; (2) "the party, his predecessors and grantors have paid all taxes which have been levied and assessed [on the property]," *id.;* and (3) the property was, in pertinent part, "usually cultivated or improved," "protected by a substantial inclosure[,]" or "used . . . for the ordinary use of the occupant," *id.* § 78–12–9.

¶ 23 To be entitled to summary judgment on the basis of adverse possession, Metro West must affirmatively show all the statutory elements of adverse possession. *See English v. Openshaw*, 28 Utah 241, 247, 78 P. 476, 477 (1904) ("To overthrow [the] presumption [that the adverse party is not under subordination to the legal owner's title], the party claiming adversely ha[s] the burden to establish the fact[ ] by competent evidence . . . ."); *see also Martin v. Kearl*, 917 P.2d 91, 93 n. 5 (Utah Ct.App.1996) ("[B]ecause of the gravity of adverse possession claims—wresting title from otherwise rightful owners—claimants must strictly comply with all requirements."); 3 Am.Jur.2d *Adverse Possession* § 311 (1986). In this case, we find at least two key areas of dispute sufficient to render summary judgment inappropriate.[4]

---

**4.** Metro West asserts that the County's failure to set forth in its opposing memorandum "a statement of facts it claims are in dispute as [required by] [r]ule 4–501(2)(B) of the Utah Code of Judicial Administration" should result in our finding that Metro West's facts "be deemed admitted for purposes of summary judgment and this appeal." It is true that the County's opposing memorandum did not set forth disputed facts listed in numbered sentences in a separate section as required by the Utah Rules of Judicial Administration. *See* Utah R. Jud. Admin. 4–501(2)(B). However, given that the disputed facts were clearly provided in the body of the memorandum with applicable record references, we find the failure to comply with the technical requirements of rule 4–501(2)(B) to be harmless in this case. *See Hall v. NACM Intermountain, Inc.*, 1999 UT 97, ¶¶ 19–21, 988 P.2d 942 (noting the failure to specifically set forth a legal basis for the award of attorney fees in compliance with rule 4–505 of the Utah Code of Judicial Administration was a harmless error because the court and both counsel always knew the purpose behind and the basis for the proposed award of fees). Accordingly, we examine whether the County's disputed

¶ 24 First, there are disputed facts as to whether Metro West's use of the Property was continuous during the required seven-year period. Metro West argued before both this court and the trial court that "[b]eginning in 1990 and continuing thereafter, Metro West improved [the Property] by bulldozing numerous access roads across the property[,] excavating and drilling numerous holes on [the Property,] and conducting regular sample testing of the underground materials." However, as the County argued to the trial court, whether the nature of this use was sufficiently continuous is in dispute.

¶ 25 For example, prior to transferring the Property to Metro West, Dr. Richards, Lamona Farms's owner, could not specify during what period he or his employees occupied the Property. Dr. Richards also could not recall how many days his employees spent on the Property conducting testing. And, though he claimed that roads were being made on all of Lamona Farms's property continuously, Dr. Richards could not identify any times when such roads were made on the Property specifically because he did not know where the Property's boundaries were. Metro West also had no record of how many days its employees spent on the Property. Roy McNeil, one of Metro West's principals, testified that he knew Metro West had begun exploring dirt on the Property in 1998; however, he could not say when exploration had occurred between 1990 and 1995.

¶ 26 Second, a dispute exists regarding whether Metro West paid property taxes on the Property for the seven-year period. As the County correctly asserts, the tax receipts submitted to the trial court do not indicate that the taxes being paid were specifically for the Property. In fact, not only do descriptions provided in the "property description" portion of the receipts differ from year to year, but the total acreage of land identified in the tax receipts changes as well. Based on the tax receipts provided in the record, it is impossible for us to determine whether the varied descriptions on the tax receipts were, in fact, attributable to the Property.

¶ 27 Because there is a genuine issue of material fact as to whether Metro West con-

tinuously used and paid taxes on the Property, Metro West is not entitled to summary judgment and we need not address whether disputed facts exist as to the remaining elements of adverse possession under Utah Code section 78–12–9. Moreover, having determined that Metro West is not entitled to summary judgment on the basis of adverse possession, we need not reach the County's alternative argument that summary judgment would be barred by the "designated for public use" exception under Utah Code section 78–12–13.

## CONCLUSION

¶ 28 To take free of an unrecorded interest in property under Utah's Recording Statute, a subsequent purchaser must purchase the property in good faith without notice of any defect in his grantor's title. Because a purchaser whose chain of title is founded on a wild deed necessarily has constructive record notice that his grantor's record title is defective by virtue of taking title from a stranger to the record, a purchaser who acquires property through a wild deed cannot be a good faith purchaser. Accordingly, Metro West is not a bona fide purchaser under Utah's Recording Statute and cannot take free of the County's unrecorded interest in the Property unless it establishes that the Tingeys obtained valid title to the Property through a means other than a recorded conveyance. Moreover, since genuine issues of material fact exist as to whether Metro West adversely possessed the Property, summary judgment is inappropriate. We therefore reverse and remand for further proceedings consistent with this opinion.

¶ 29 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.

facts are sufficient to preclude summary judg-

ment in favor of Metro West.