J-A21026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SJW HOME ASSOCIATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGINE'S KNIGHTS, INC. | : | No. 2380 EDA 2021 |

Appeal from the Judgment Entered November 9, 2021
In the Court of Common Pleas of Bucks County
Civil Division at No:  2019-05236

| | | |
|---|---|---|
| SJW HOME ASSOCIATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGINE'S KNIGHTS, INC. | : | |
| | : | |
| Appellant | : | No. 2386 EDA 2021 |

Appeal from the Judgment Entered November 9, 2021
In the Court of Common Pleas of Bucks County
Civil Division at No:  2019-05236

BEFORE:  LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 12, 2022**

SJW Home Association (Appellant), lessor, appeals from the judgment entered following the trial court's verdict in favor of tenant Georgine's Knights, Inc. (GKI), in GKI's quiet title action against Appellant, and against Appellant in its possession/ejectment action against GKI.  Appellant additionally challenges the trial court's failure to strike a *lis pendens* indexed on Appellant's

property. GKI cross-appeals in the event this Court declares the parties' lease invalid. GKI challenges the trial court's failure to award GKI damages to prevent Appellant's unjust enrichment and the admissibility of certain testimony at trial. Upon careful review, we affirm.

Underlying this appeal is a 99-year commercial lease (Lease) between Appellant and GKI, for property located at 1492 Woodbourne Road, Levittown, Pennsylvania (Property). Since 1952, Appellant has held a "club catering" Pennsylvania liquor license identifying the Property as licensed property where liquor may be sold. In 2006, Appellant leased the Property to GKI for use as a banquet and catering facility:

> At the time the Lease was being negotiated, [Appellant] was in a dire financial situation and needed a large influx of capital to resolve those issues. The transaction terms were set forth in the 99-[y]ear Lease beginning January 1, 2007[,] with an option to renew for a second 99-year term. Under the Lease, GKI was required to pay [Appellant] the total sum of $800,000.00 between December 31, 2006 and January 1, 2012. The first payment of $50,000.00 was due at the time of signing, followed by three payments of $150,000.00 due by January 1 of each year, then three payments of $100,000.00 due by January 1 of the remaining three years. Following the full payment of $800,000.00, GKI's rent thereafter would be $1.00 per year plus an agreed-upon $4,800.00 annual "bingo/sponsor fee" for the remaining 93 years.[FN1] GKI timely made all payments due from 2007 through 2018 when the present dispute developed.

---

[FN1] Pursuant to the written [] Lease terms, GKI was also responsible for 70% of the water and sewage charges, 50% of the electricity charges, 50% of the grass and snow removal charges, 70% of the parking lot repairs, 70% of the real estate taxes and 100% of the heating oil related to the Property.

---

- 2 -

Although not set forth in the written Commercial Lease and Addendum(s), both parties assert in this litigation that for the purposes of its banquet/catering events, GKI would utilize [Appellant's] liquor license (hereinafter "Liquor License") during the lease term. Pursuant to [an] alleged oral understanding, [Appellant] would use its Liquor License to obtain liquor, which GKI would then purchase from [Appellant] for sale to its banquet customers. [Appellant] would invoice GKI for reimbursement of the purchased liquor monthly together with other payment(s) due under the [] Lease. This "side agreement" existed from January 1, 2007 to January 2016.

**The parties stipulated before [the trial court] that, despite not being addressed anywhere in the written [] Lease, usage of the [Appellant] Liquor License was one of the essential and material terms of their Property transaction.** Consequential to this omission, the parties were subsequently informed in February 2016[,] by the Pennsylvania Bureau of Liquor Control Enforcement [(LCE),] that usage of the Liquor License in this manner was a violation of the Pennsylvania Liquor Code. [Appellant] was issued an enforcement Citation for permitting GKI to purchase and resell the liquor [Appellant] bought under their club catering Liquor License as part of GKI's banquet facility operation on the premises. [Appellant] subsequently pled guilty to the five counts in the Citation.

GKI thereafter attempted to acquire and move its own liquor license into Middletown Township but was denied permission to do so by the Township Supervisors. GKI also refused a Concessionaire's Agreement proffered by [Appellant] which would result in additional substantial payments to [Appellant] to obtain the liquor directly for GKI's banquet events at the Property, finding this proposal to be unfair given their prior front-loaded payments under the [] Lease and GKI's lack of profit without the ability to serve alcohol directly to banquet patrons. GKI countered with a request that [Appellant] decertify its Liquor License for the Property so GKI could initially operate a BYOB pending acquisition and transfer of their own liquor license to the Property, but [Appellant] refused to do so.

[Appellant] then entered into an Agreement of Sale to sell the Property to a third party, Abstract Business Solutions ("Abstract"), for the amount of $184,242.16 without the knowledge and agreement of GKI. This figure represented the

- 3 -

remaining balance on [Appellant's] mortgage debt on the premises plus closing costs. **Although GKI held a Right of First Refusal under the Commercial Lease, it was never offered the opportunity to purchase the Property for the same mortgage payoff amount as Abstract.** Rather, [Appellant] sent correspondence to GKI soliciting an offer to purchase the Property, but no specified sale amount was indicated. GKI learned that [Appellant's] lender, Fulton Bank, was in the process of foreclosing on the Property and **GKI arranged to directly purchase the mortgage to prevent the Property from going to foreclosure and Sheriffs Sale** and to protect its prior substantial investment of $800,000.00 for the [] Lease to operate a banquet facility on the Property.

When the parties could not find or agree to alternatives by which GKI could lawfully occupy the premises and serve alcohol at its banquets/catering events, GKI ceased scheduling future events and held its last banquet in the leased Property on December 31, 2017. The parties were ultimately unable to resolve their respective issues related to the Property and the [] Lease due to the consequences of the Liquor Control enforcement action.

Trial Court Opinion, 1/14/22, at 1-3 (footnote in original, emphasis added).

On July 24, 2019, Appellant confessed judgment on the Property and filed a praecipe for writ of possession seeking the ejectment of GKI from the Property. *See* Confession Complaint, 7/24/19; Praecipe for Writ of Possession, 7/24/19. One week later, GKI filed a petition to strike off or open the confessed judgment and for a stay of execution. Petition to Strike/Open, 7/31/19.

GKI filed a writ of summons on August 5, 2019, and indexed a *lis pendens* against the Property on August 6, 2019. Appellant filed a motion to strike the *lis pendens* on August 6, 2019, and requested that GKI be barred from indexing a future *lis pendens* against the Property. On October 11, 2019,

- 4 -

the trial court consolidated GKI's action with Appellant's confession of judgment/possession action. Trial Court Order, 10/11/19.

On November 15, 2019, GKI filed a complaint to quiet title to the Property, which was consolidated with Appellant's action. GKI Complaint, 11/15/19. In addition to quieting title to the Property, *see id.* at ¶¶ 23-27, GKI sought enforcement of the Lease's right of first refusal provision, *see id.* ¶¶ 26-27. GKI averred it "is entitiled to a determination that [Appellant] is required to officer GK[I] the purchase of the [Property] pursuant to the terms set forth in the agreement." *Id.* ¶ 27. This right of first refusal would allow GKI to purchase the property for the same amount as Appellant agreed to with Abstract. *Id.* at pg. 5 (prayer for relief). GKI further averred Appellant's frustration of the Lease's purpose. *Id.* ¶¶ 29-39. In the event the Lease is declared invalid, GKI sought the return of $711,111.04 in funds paid to Appellant. *Id.* ¶¶ 31-32, 40. On February 20, 2020, the trial court entered an order opening Appellant's confessed judgment and consolidating the parties' respective actions.

The trial court held a bench trial on April 19, 2021, and issued its decision on July 2, 2021. The trial court upheld the validity of the Lease, finding in favor of GKI and against Appellant on Appellant's demand for ejectment/possession of the Property. *Id.* ¶ 26. The trial court found in favor of Appellant and against GKI on GKI's claim for return of funds. *Id.* ¶ 27. Both parties filed post-trial motions, which the trial court denied. Following

the entry of judgment on November 9, 2021, Appellant filed this timely appeal.

GKI timely filed a cross-appeal. The parties and the trial court have complied

with Pa.R.A.P. 1925.

**Appellant's Appeal**

We first adress the issues raised in Appellant's appeal:

A. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW IN DENYING [APPELLANT'S] REQUEST FOR POSSESSION, AND DECLARING THE LEASE BINDING UPON THE PROPERTY, IN LIGHT OF THE ILLEGALITY *AB INITIO* OF THE PARTIES' LEASING ARRANGEMENT[?]

B. WHETHER, EVEN IF THE TRIAL COURT PROPERLY UPHELD THE VALIDITY OF THE LEASE BY SEVERING THE ILLEGAL USE OF THE LIQUOR LICENSE FROM IT, IT NONETHELESS ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW IN DENYING [APPELLANT'S] REQUEST FOR POSSESSION, AND DECLARING THE LEASE BINDING UPON THE PROPERTY, IN LIGHT OF [GKI'S] MATERIAL BREACHES OF THE LEASE[?]

Appellant's Brief at 2 (capitalization in original).

In cases arising from non-jury trial verdicts, our role

is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue … concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Slomowitz v. Kessler*, 268 A.3d 1081, 1093 (Pa. Super. 2021) (citation omitted).

Appellant filed an action for possession of the Property and the ejectment of GKI. Appellate review in an ejectment action is "limited to a determination of whether the [court] committed an error of law or an abuse of discretion[.]" *Roberts v. Estate of Pursley*, 718 A.2d 837, 840 (Pa. Super. 1998). The decision of the court in an ejectment case "will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." *Id.*

"[E]jectment is an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession," and that the purpose of such an action is to determine "the immediate rights between plaintiff and defendant involved in that particular litigation." *Wells Fargo Bank, N.A. v. Long*, 934 A.2d 76, 78 (Pa. Super. 2007) (citation omitted). "[E]jectment is a possessory action only, and can succeed only if the plaintiff is out of possession, and if he has a present right to immediate possession." *Id.* at 79 (citation omitted). Stated another way, "[e]jectment is a possessory action wherein a plaintiff must prove the right to exclusive possession vis-a-vis proof of paramount title." *Roberts v. Estate of Pursley*, 700 A.2d 475, 480 (Pa. Super. 1997) (internal quotation marks omitted).

Appellant maintains the trial court erred in not awarding it possession of the Property, "due to the underlying illegality of [GKI's] use and occupation of the Leased Premises[.]" Appellant's Brief at 15, 17. Appellant relies on the following joint stipulations of the parties:

8. Not included in the Lease, but an essential, material term of it, was that in connection with and for the purposes of [GKI's] banquet/catering events, [GKI] would have the non-exclusive right to use [the Liquor License] during the term of the Lease.

9. Under this arrangement, [Appellant] would procure the liquor utilizing its Liquor License and [GKI] would sell the liquor to its customers at the banquet/catering events.

….

11. From January 1, 2007 through January 2016, both [Appellant and GKI] proceeded with this arrangement under the Lease regarding the use of the Liquor License.

12. Then, in and around February 2016, the [LCE] opened an investigation into the usage of the Liquor License and the Lease.

13. As a result of its investigation, the LCE issued [Appellant a Citation] for violations of the Pennsylvania Liquor Code.

14. The Citation included a violation for permitting [GKI] to operate the Leased Premises, which was also the licensed premises under the Liquor License.

15. [Appellant] pled guilty to the five counts in the Citation and paid the fine to resolve the LCE investigation.

17. After the LCE investigation, [Appellant and GKI] were unable to find an arrangement by which [GKI] could legally serve alcohol at its banquets/catering events under the Lease.

18. [GKI] held its last event in the Leased Premises on December 31, 2017.

Appellant's Brief at 16-17 (quoting Stipulated Facts).

Appellant challenges the trial court's determination that the Lease was binding upon the Property, despite its illegal provision. *Id.* at 17. Appellant contends the Lease, "as contemplated, formed and performed by" Appellant and GKI, was illegal, as demonstrated by the LCE Citation. *Id.* at 18. According to Appellant, GKI's use of the liquor license was so critical to the Lease "that when the illegal use ceased, so, too, did [GKI's] payments under the Lease and its use and occupation of the Leased Premises." *Id.* Appellant acknowledges a claim "connected with an illegal contract is enforceable if the plaintiff does not require the illegal transaction to establish the claim." *Id.* at 18-19. However, based on the parties' stipulations, Appellant maintains the parties' illegal use of the liquor license was "a central and essential element to the Lease even though it no doubt purposely made no mention of it [in] writing." *Id.* at 20. Appellant disputes that the Lease can performed, as intended, without the parties' illegal arrangement. *Id.* Appellant thus disputes the trial court's verdict in GKI's quiet title action, and the court's refusal to strike the *lis pendens* against the Property. *Id.* at 21.

Further, Appellant claims its ejectment action for immediate possession of the Property was not based upon the Lease, but upon the Lease's illegality and GKI's stipulated abandonment of the Property. *Id.* According to Appellant, the trial court received as evidence Appellant's deed to the Property. *Id.* at 22. In contrast, Appellant claims GKI presented no evidence beyond the "illegal and/or abandoned Lease[.]" *Id.*

In summary, Appellant claims the trial court's disregard of the parties' stipulations resulted in the court's erroneous verdict in GKI's quiet title action. *See id.* at 23-24. Specifically, Appellant claims the trial court erred in disregarding stipulations that the sale of alcohol was a material condition of the Lease; GKI had assumed the risk of the illegality of the Lease; the trial court exceeded its authority by making declarations regarding the defenses of the parties; and GKI's use and occupation of the Property was illegal, and cannot be severed from the Lease. *Id.*

In addressing Appellant's issues, we are mindful that:

[A] lease is a contract and is [] to be interpreted according to contract principles. A fundamental rule in construing a contract is to ascertain and give effect to the intent of the contracting parties. It is firmly settled that the intent of the parties to a written contract is contained in the writing itself. When the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone.

*Kmart of Pennsylvania, L.P. v. MD Mall Associates, LLC*, 959 A.2d 939, 943-44 (Pa. Super. 2008).

Whether a judge has correctly interpreted a writing and properly determined the legal duties which arise therefrom is a question of law for the appellate court. The legal effect or enforceability of a contract provision presents a question of law accorded full appellate review and is not limited to an abuse of discretion standard….

*Dominic's Inc. v. Tony's Famous Tomato Pie Bar & Rest., Inc.*, 214 A.3d 259, 268 (Pa. Super. 2019) (citation omitted).

Appellant agrees the Lease included no provision regarding GKI's sale of liquor on the Property, or its use of Appellant's Liquor License. Appellant's

Brief at 15 (citing Stipulation 8).  Appellant relies on the parties Stipulation 8 that the use of Appellant's Liquor License was "a central and essential element to the Lease, even though it no doubt purposely made no mention of it [in] writing." *Id.* at 20.

"A stipulation of facts is binding and conclusive on a trial court[.]" ***Mader v. Duquesne Light Co.***, 241 A.3d 600, 615 (Pa. 2020).  However, "the court may nonetheless draw its own legal conclusions from those facts." ***Id.***  Our review confirms the Lease is silent on the sale of alcohol on the Property or GKI's use of Appellant's Liquor License.

The parties stipulated they had a prior "material" agreement regarding GKI's sale of alcohol from the Property and its use of Appellant's Liquor License.  Stipulation of Fact 8.  Notwithstanding, the Lease included the following integration clause subsuming the parties' prior agreement:

> [T]his [L]ease sets forth all the promises, agreements, conditions and understandings between the Lessor or Broker for Lessor, and the Lessee relative to the demised premises, **and that there are no promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth**, and any subsequent alteration, amendment, change or addition to this lease shall not be binding upon the Lessor or Lessee unless reduced to writing and signed by them.

Lease Agreement (Part 2), ¶ 32 (emphasis added).

This Court has explained:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. **All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the**

- 11 -

**subsequent written contract** ... and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

… An integration clause which states that a writing is meant to represent the parties' entire agreement is [] a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution.

**Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.** One exception to this general rule is that parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake. In addition, where a term in the parties' contract is ambiguous, "parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances."

*Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856, 886-87 (Pa. Super. 2017) (emphasis in original, citation omitted).

By its terms, the Lease's integration clause expressly subsumed all previous oral or written negotiations and agreements between the parties, rendering the stipulation parol evidence. *See id.*; *see also* Lease Agreement (Part 2), ¶ 32. Appellant does not claim the stipulated "material term" regarding the Liquor License was omitted "because of fraud, accident or mistake." *Krishnan*, 171 A.3d at 887. *See id.* As the trial court explained:

[T]he parties' Stipulation that GKI's usage of [Appellant's] club catering Liquor License was an essential term to the Lease

- 12 -

> where, in its absence, the purpose of the Lease is frustrated, is wholly without any reliable and credible evidentiary support and is also without legal support. Under Pennsylvania law, where an integration clause exists in a commercial lease which explicitly states the Lease is meant to be a comprehensive understanding of the parties, contrary oral evidence is not to be admitted to alter the terms of the Lease. Accepting the parties' proposed Stipulation in this litigation would fundamentally alter the [] Lease because it would predicate its purpose on something which not only was omitted from the plain language but was also unlawful under Pennsylvania law.
>
> However, the integration clause allows [Appellant] and GKI to alter, amend, change or add to the Lease if the parties reduce a material term to a signed writing. At no point during the duration of this Lease or even following the 2016 violation have the parties entered into any additional written agreement to clarify or substantiate the issues related to sales of liquor as part of GKI's 99-Year Lease interest in the Property. As a result, this [c]ourt committed no error in its determination that GKI's usage of [Appellant's] Liquor License cannot be considered by the [c]ourt to be an essential or material term of the Lease where any reference to liquor sales or a Liquor License was entirely omitted by the parties, and subsequently determined to be prohibited.

Trial Court Opinion, 1/14/22, at 14-15. We agree with the trial court's rationale and conclusion that Stipulation 8 constituted parole evidence and cannot be considered. *See id.*; *see also Balkiewicz v. Asenavage*, 178 A.2d 591, 595 (Pa. 1962) ("We thus hold that the plaintiff may not maintain an action in ejectment against her deceased husband's grantees and that her remedy is to have her one-third interest in the controverted property set aside to her by action in partition."). Further, excluding Stipulation 8, Appellant's claim challenging the Lease as illegal fails. Appellant's first issue does not merit relief.

- 13 -

In its second claim, Appellant argues that "even if the trial court properly upheld the validity of the Lease by severing the illegal use of the Liquor License from it," the court improperly denied Appellant's request for possession. Appellant's Brief at 25. Appellant claims GKI materially breached the Lease, and has not paid rent since the first quarter of 2018. *Id.* According to Appellant, GKI's stipulated non-payment of rent and its abandonment of the Property constitute material breaches of paragraphs 8(a) and 9 of the Lease. *Id.* Paragraph 8(a) requires the timely payment of rent; Paragraph 9 prohibits GKI from vacating or deserting the premises, "or permit the same to be empty and unoccupied." Lease, ¶¶ 8(a), (9). Appellant claims the trial court disregarded these breaches when it found against Appellant in its claim for possession. Appellant's Brief at 27.

A landlord-tenant agreement is a contract. *Sw. Energy Prod. Co. v. Forest Resources, LLC*, 83 A.3d 177, 186-87 (Pa. Super. 2013). A lease can be rescinded only for material breaches. *Int'l Diamond Imps., Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1270-71 (Pa. Super. 2012).

> While a "material breach" relieves a non-breaching party of its obligation to perform, our law also is clear that executed contracts cannot be rescinded or annulled … simply because a party found the contract to be burdensome or a financial failure. Thus, if the breach is an immaterial failure of performance, and the contract was substantially performed, the contract remains effective…. In other words, the non-breaching party does not have a right to suspend performance if the breach is not material.

*Id.* at 1271 (citations and some quotation marks omitted).

- 14 -

In determining whether a breach is material, Pennsylvania courts follow the Restatement (Second) of Contracts, which sets forth the following factors:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and]
>
> (e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

*Id.* (quoting RESTATEMENT (SECOND) OF CONTRACTS § 241).

Here, the evidence supports the trial court's determination that GKI did not materially breach the Lease by withholding rent and payments. As the trial court explained:

> [A]lthough GKI had stopped **nominal** annual amounts due as of 2019, it could readily cure the nominal payment of **one dollar** due per year under the annual rent as well as the bingo fees and percentage assessments should [Appellant] take the necessary step to assist GKI's profitable use of the facility for a banquet hall which can serve alcohol[,] as the parties acknowledged was the intended use from the beginning of the transaction.[1] These issues would also presumably be addressed in the partition action.

Trial Court Opinion, 1/14/22, at 23 n.7 (emphasis and footnote added).

_____

[1] Appellant's Liquor License still encumbers GKI's leased premises.

The trial court further found the evidence did not support Appellant's claim that GKI had "abandoned" the Property. Trial Court Opinion, 1/14/22, at 22. When a tenant voluntarily abandons a leased premises, a landlord has the right to immediate repossession of the premises. ***See Turnway Corporation v. Soffer***, 336 A.2d 871, 877 (Pa. 1975). Typically, to prove abandonment, the landlord bears the burden of demonstrating (1) the tenant's intention to abandon; and (2) conduct by which the intention is carried into effect. ***See id.***

The trial court found Appellant failed to meet this burden:

The Court did receive evidence that the total [P]roperty had an appraised fair market value of $1,300,000.00 in 2017. As set forth herein, GKI paid $800,000.00 over six years to [Appellant] beginning in 2007. This amount is more indicative of a long-term acquisition or interest in the [P]roperty.

….

[Appellant's] witness, George Dranginis, testified that GKI has left tables and chairs inside the leased Property and their sign remains outside the Property. N.T. 04/19/2021, p. 66. GKI submits that it has not abandoned its interest in the Property, rather it fully intends to return to the prior operation once the parties reach an agreement or otherwise resolve their present issues.

… GKI has demonstrated to this Court its clear intention to protect its interest in the Property over the term of the transaction by maintaining personal items inside the Property and in keeping its sign outside. Further, GKI has directly indicated to [Appellant] that it would readily resume its occupation of the Property once [Appellant] decertifies its club Liquor License held on the Property. The facts presented to the [c]ourt clearly indicate that GKI fully intends to return to the leased Property when these pending issues are resolved following [Appellant's] attempt to confess judgment for possession and eject GKI from the Property.

Its suspension of booking and hosting events at the leased Property is ultimately the result of [Appellant's] refusal to decertify its Liquor License from the leased Property so that GKI may transfer an appropriate license for its operations at the level of profitability it assumed when entering into the transaction and paying $800,000.00 in a front-loaded manner. GKI's suspension of banquet events pending resolution of its ability to sell and serve alcohol at future functions is not evidence of any intention GKI had or has to abandon the Property….

Trial Court Opinion, 1/14/22, at 22-23; ***see also*** N.T., 4/19/21, Exhibit C-1 (Stipulated Fact No. 6 ("[b]eginning January 1, 2013 GKI's rent would be $1.00 per year plus a $4,800 Annual bingo/sponsor fee for the duration of the lease."), and No. 8 (GKI made all payments owed through the first quarter of 2019)).

The trial court's findings are supported in the record, and we discern no error or abuse of discretion. ***See Roberts***, 718 A.2d at 840. Appellant's claim does not merit relief.

## GKI'S CROSS-APPEAL

In the event the Lease is declared invalid or illegal, GKI presents the following issues for our review:

[1.] Whether the trial court erred in finding that [GKI] was not entitled to compensation for the remaining years of the Lease in light of Appellant's refusal to provide possession and preventing [GKI from] utilizing the Leased Premises?

[2.] Whether the trial court erred in receiving testimony from Charles Gleason, MAI[,] as his opinion is irrelevant to the Lease and dispute in this matter?

GKI's Brief at 1-2 (issues defending Appellant's appeal and some capitalization omitted).

In its first issue, GKI argues:

In the event the Lease is declared to be invalid, it would be inequitable for [Appellant] to retain the additional eighty-eight years of rent payments.

*Id.* at 19 (emphasis and most capitalization omitted). GKI admits:

If GKI can return to the Leased Premises and operate its catering business, as to retain the benefit of its bargain, then there would be no restitution. However, if the lease is invalidated or [GKI] is not permitted to return to the [Property], then [Appellant] would be unjustly enriched by retaining sums paid for which [GKI] receives no benefit.

*Id.*

As set forth above, this Court affirms the trial court's findings and conclusions regarding the validity of the lease. Therefore, GKI's first issue is moot. *See Printed Image of York, Inc. v. Mifflin Press, Ltd.*, 133 A.3d 55, 59 (Pa. Super. 2016) ("An issue before a court is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy."); *Stuckley v. Zoning Hearing Bd. of Newtown Twp.*, 79 A.3d 510, 516 (Pa. 2013) (a decision rendered on a moot issue would be merely advisory and inappropriate).

Similarly, GKI's second issue challenges the admissibility of Charles Gleason's testimony as irrelevant. *Id.* at 23. Because this Court did not award a new trial, any issue regarding the testimony admissibility is moot. *See Stuckley*, 79 A.3d at 516. Thus, we do not reach GKI's issues.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/12/2022</u>